UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JEREMY CROWN                                          PLAINTIFF


VS.                                    CASE NO. 3:08CV418TSL-JCS


NISSAN NORTH AMERICAN, INC.                           DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant
Nissan North America, Inc. (Nissan) for summary judgment pursuant
to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff
Jeremy Crown has responded to the motion and the court, having
considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that the motion
is well taken and should be granted.

In this action, plaintiff alleges he was terminated from his
employment with Nissan in violation of the Family Medical Leave
Act, 29 U.S.C. § 2601 et seq. (FMLA).[1]  Specifically, plaintiff,
who was diagnosed with diabetes in August 2006, alleges that in
October 2007, he requested approval for three days of FMLA leave
for a diabetes-related condition or illness, which Nissan wrongly
denied; and because Nissan refused to approve his request for FMLA

---

[1]      In addition to his FMLA claim, plaintiff also asserted
claims for violation of the Americans with Disabilities Act and
under state law for intentional infliction of emotional distress.
In response to Nissan's motion, plaintiff has conceded those
claims, which are therefore not discussed herein.

leave, he was charged with three days' unexcused/unapproved absence from work, which Nissan ultimately asserted as grounds for his subsequent termination in January 2008. For its part, Nissan takes the position that plaintiff's October 2007 absences cannot form the basis of a viable FMLA claim because plaintiff failed to comply with Nissan's policy which required that he provide notice and a medical certification demonstrating that the leave was covered by the FMLA, and that consequently, plaintiff was not entitled to FMLA leave for those absences. It is on this basis that Nissan has moved for summary judgment.

The following facts are undisputed: Plaintiff became employed by Nissan as a production technician in 2003. In August 2006, plaintiff became severely ill and was hospitalized, causing him to be absent from work for ten days. At that time, plaintiff was diagnosed with Type 1 Diabetes. When he returned to work on August 15, 2006, plaintiff completed Nissan's "Employee's Request for FMLA Designation of Time Off," listing "Diabetes Condition" as the "Reason for Request." That request was accompanied by a "Certification of Health Care Provider," on which his doctor indicated that plaintiff suffered from a "chronic condition" that would be of indefinite duration and for which plaintiff would "need the ability to stop for snacks and check his sugar as

2

needed." Nissan approved plaintiff's absence as protected, FMLA leave.[2]

The following October, plaintiff was absent from work for three days, October 24, 25 and 26. Plaintiff maintains that this period of absence was related to an illness resulting from his diabetes, and upon returning to work on October 27, he filed the required documents to request FMLA leave. On the form, plaintiff cited "illness" as the reason for request, for which he had sought treatment at an MEA Medical Clinic. As the basis for claiming the absence as FMLA protected, the accompanying certification completed by MEA indicated that plaintiff's illness lasted more than three days (which would have made it protected FMLA leave, see infra). However, that was obviously incorrect, since plaintiff was absent for only three days. Accordingly, Nissan denied plaintiff's request for approval of FMLA leave. His absence was thus unprotected and therefore, based on Nissan's Attendance Corrective Action Guidelines, pursuant to which employees are assessed attendance points for unexcused and excused

---

[2] Under Nissan's Attendance Corrective Action Guidelines, "protected" absences include absences protected by FMLA, absences covered by an employee's paid time-off, holidays, approved vacation days, military or jury duty service, disability or bereavement leave, approved personal leaves and approved parental or bonding leaves.

3

(but unpaid and unprotected) absences, plaintiff was assessed four

points, which brought his attendance point total to twelve.[3]

　　According to Nissan, thereafter, in December 2007, pursuant

to the company's normal practice of monitoring employee

attendance, Nissan conducted an investigation of plaintiff's

attendance status.  The investigation concluded that under the

company's Attendance Corrective Action Guidelines, plaintiff's

attendance point total of twelve justified a "Written Reminder";

and further, since plaintiff had been issued a "Final Written

Reminder" in May 2007 as the result of numerous successive conduct

infractions, then pursuant to Nissan's progressive corrective

action system, his incurrence of a Written Reminder for violation

of the Attendance Policy within a year of the May 2007 Final

Written Reminder warranted his termination.[4]

---

[3]　　In April 2007, plaintiff had been assessed eight
attendance points from an unexcused absence after he failed to
provide requested medical documentation substantiating his claim
that he had been absent due to sickness.

[4]　　Nissan explains that pursuant to the company's
progressive corrective action system, plaintiff was given Verbal
Reminders in September 2005 and May 2006, respectively, for making
threatening comments or gestures toward co-workers; in July 2006,
a performance appraisal noted his need for improvement in his
ability to work well with others; in February 2007, he was given a
Written Reminder for having left his work and and entered another
work area where he intentionally passed gas around other
employees; and in May 2007, he was given a Final Written Reminder
for horseplay.  The Final Written Reminder recited:
　　　Because you received a Final Written Reminder for
　　　conduct, the Company may terminate you if you have
　　　unacceptable performance, or violate any Company rule,
　　　practice, or policy that would cause you to receive a

Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave a year for, *inter alia*, a "serious health condition that makes the employee unable to perform the functions of the position of such employee".  29 U.S.C. § 2612(a)(1)(D). Applicable Department of Labor (DOL) regulations define "serious health condition" as "an illness, injury, impairment, or physical or mental condition" that involves inpatient care or continuing treatment by a health care provider.  29 C.F.R. § 825.114(a)(2). A serious health condition involving continuing treatment by a health care provider is further defined to include, *inter alia*, "[a] period of incapacity ... of more than three consecutive calendar days," and "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition." § 825.114(a)(2)(i) and (iii).  The definition of "chronic serious health condition" includes a health condition which "[m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma, *diabetes*, epilepsy, etc.)."  § 825.114(a)(2)(iii)(C) (emphasis added).

The FMLA "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights."  <u>Bocalbos v. Nat'l W. Life Ins. Co.</u>, 162

---

Written Reminder or more severe corrective action while
this Final Written Reminder remains in effect. ...
This Final Written Reminder will remain in effect for a
period of one (1) year of active service from the date
of this memorandum.

F.3d 379, 383 (5th Cir. 1998); see 29 U.S.C. § 2615(a) (covered employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA leave] right," or otherwise "discriminate against any individual for opposing any [FMLA-prohibited] practice"). Although the term "interference" is not defined in the FMLA, DOL regulations explain that "[i]interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220. See Duchesne v. Shaw Group Inc., Civil Action No. 06-607, 2008 WL 4544387, 4 (W.D. La. Sept. 10, 2008). To survive summary judgment on his interference claim,[5] plaintiff must first establish a prima facie case. "In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that [he] was entitled to a benefit that was denied." Id. (citing Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc., 464 F. Supp. 2d 562, 567 (E.D. La. 2006)). Thus, to make a prima facie case for interference with FMLA rights, plaintiff must first demonstrate that his leave was protected under the FMLA. Ford-Evans v. United Space Alliance LLC, No. 08-20033, 2009 WL 1344945, 3 (5th Cir. May 14, 2009).

---

[5] Although plaintiff herein purported to allege entitlement/interference and retaliation claims against Nissan, in response to Nissan's motion, he addresses only his interference claim. The court considers that plaintiff has thus abandoned or implicitly conceded his putative retaliation claim.

In this case, it is undisputed that plaintiff had been diagnosed with diabetes approximately one year before the period of absence at issue. Moreover, Nissan does not, nor could it reasonably challenge plaintiff's assertion that his diabetes is a "chronic serious health condition" under the terms of the FMLA. Nissan contends, however, that plaintiff cannot establish a prima facie case because he cannot show he was entitled to FMLA leave for the subject absences in October 2007.

Under the FMLA, "[a]n employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." 29 C.F.R. § 825.208(a)(1). Further, "[a]n employer may require that a request for leave ... be supported by a certification issued by the health care provider of the eligible employee ... [and] [t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). See also Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 975 (5th Cir. 1998) ("In determining whether an employee's leave request qualifies for FMLA protection, the employer must assess whether the request is based on a serious health condition, and, for that purpose, may request supporting medical documentation.") (citations and internal quotations omitted). Nissan maintains that plaintiff's request for FMLA

7

leave was properly denied because the medical certification completed by MEA did not identify any valid basis for concluding that plaintiff's three-day absence qualified for FMLA protection. The form queried, "Does the patient's condition qualify as having a 'serious health condition' under the FMLA under any one or more of the following categories?" and listed five bases on which plaintiff's condition could qualify for coverage under the FMLA. The MEA representative who completed the form initially marked the box "None of the Above," but then crossed that out and checked the box "Condition lasting more than three days...." The box for "Chronic condition was not marked," and the request for a description of medical facts supporting the certification of the patient's "serious medical condition" was left blank.

Plaintiff admits that the condition for which he sought treatment during October 2007 did not last more than three days. His own portion of the certification indicated that he had first become unable to work on October 24, and it is undisputed that he returned to work three days later, on October 27. Thus, the reason indicated on the MEA certification for FMLA coverage was patently incorrect. Plaintiff nevertheless reasons that notwithstanding that the certification form otherwise gave no indication as to any basis upon which the leave might have qualified for FMLA protection, his request for FMLA leave should have been approved because Nissan knew, or should have known, that

8

these absences were for his "chronic condition," diabetes.  In

this regard, plaintiff reasons that Nissan knew he suffered from

diabetes, a serious, chronic medical condition, and it knew from

the time it first approved FMLA leave for this condition in August

2006 that this condition would continue for an indefinite period,

and would require future doctors' visits and medication.

Plaintiff thus reasons that Nissan should have known that his

three-day absence in October 2007 resulted from a period of

incapacity due to his chronic serious health condition because it

was aware that he had this condition, and was likewise aware that

this condition had previously necessitated treatment.[6]  Plaintiff

does not deny that the certification form did not identify a valid

basis for his FMLA leave request.  He simply contends that he

should not have been penalized for the lack of competence of the

individual who completed the form, arguing,

> The long and short of this situation is that in 2007,
> for the first time, Plaintiff had his FMLA Designation
> Form completed by a doctor who treated Plaintiff in an
> "MEA Clinic" setting.  Meaning no disrespect to the MEA
> clinics which provide exceptional care to a great number
> of residents of this community, this MEA physician had
> only a snap-shot view of one incidence of treatment in a
> more than year-long Diabetes treatment scheme.  The form
> was hastily, hurriedly and less than thoroughly
> completed.

---

[6]    He notes, in fact, that two months earlier, in August
2006, he had requested and been approved for an FMLA leave for a
diabetes-related illness.

As defendant correctly points out, plaintiff has offered no

evidence that the form was incorrectly completed, or that it was

"hastily, hurriedly and less than thoroughly completed."  In any

event, whether he could prove that or not, the fact remains that

regardless of the reason, plaintiff failed to submit the required

certification establishing that his absence on October 24, 25 and

26 was due to his chronic, serious health condition.  Plaintiff's

suggestion that Nissan should have known that his absences were

related to a chronic condition despite the health care provider's

failure to so indicate simply because it knew he had been earlier

diagnosed with a chronic condition is without merit.  By this

argument, plaintiff is, in effect, contending that once an

employer is on notice that an employee has a chronic health

condition, the employer must thereafter assume that all medical

absences from work are related to that condition.  This position

is directly contradicted by those provisions of the FMLA which

permit the employer to require notice that leave is requested for

a qualifying reason and which authorize the employer to require

the plaintiff to furnish certification for his healthcare provider

that each period of absence is covered by the FMLA.  As the courts

have recognized,

> The FMLA does not require an employer to be
> "clairvoyant." [Brown v. The Pension Bds., United Church
> of Christ, 488 F. Supp.2d 395, 409 (S.D.N.Y. 2007)].
> Thus, if the employee fails to provide its employer with
> the required notice, "the employer can deny leave even
> if the employee has a serious health condition."

> Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311
> (7th Cir. 2006); see also 29 C.F.R. § 825.208(a)(1) ("An
> employee giving notice of the need for unpaid FMLA leave
> must explain the reasons for the needed leave so as to
> allow the employer to determine that the leave qualifies
> under the Act.  If the employee fails to explain the
> reasons, leave may be denied."). ... [T]he "FMLA does
> not require employers to play Sherlock Holmes, scanning
> an employee's work history for clues as to the
> undisclosed, true reason for an employee's absence."
> See de la Rama v. Illinois Dep't of Human Servs., 541
> F.3d 681, 687 (7th Cir. 2008)....

Basso v. Potter, 596 F. Supp. 2d 324, 338-339 (D. Conn. 2009).

See also Golden v. New York City Dept. of Environmental

Protection, No. 06 CIV. 1587,  2007 WL 4258241 (S.D.N.Y. Dec. 3,

2007)(holding that evidence that the employer knew that the

employee suffered from a chronic medical condition did not relieve

the employee of the duty to notify the employer that an individual

absence was due to this condition).

Based on the foregoing, it is manifest that plaintiff cannot

establish he was entitled to FMLA leave and cannot establish his

prima facie case.[7]  See Comeaux-Bisor v. YMCA of Greater Houston,

290 Fed. Appx. 722, 725, 2008 WL 3889976, 2 (5th Cir. 2008)

(holding that plaintiff could not prevail on her FMLA interference

claim in view of her failure to submit the requisite certification

---

[7]     The court would note, too, that despite the argument of
his counsel that his treatment in October 2007 at the MEA related
to his diabetes, he has offered no evidence that this is the case.
Even if he had done so, it would not prevent summary judgment
because his failure to provide an adequate certification cannot be
remedied at this point.  The court's point is simply that
plaintiff has neither offered nor identified any evidence in the
record to show that his October 2007 illness was related to his
diabetes.

establishing she suffered from a "serious health condition").  It

follows that Nissan is entitled to summary judgment.[8]

It is therefore ordered that Nissan's motion for summary

judgment is granted.

A separate judgment will be entered in accordance with Rule

58 of the Federal Rules of Civil Procedure.

SO ORDERED this 8th day of June, 2009.


                                    /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE

---

[8]     Nissan argues alternatively that it cannot be liable on
plaintiff's FMLA claim since at the time plaintiff received the
Written Warning for his October absences, a recommendation had
already been made that he be terminated for misconduct involving a
co-worker and since the evidence establishes that plaintiff would
have been fired based on that recommendation.  See Throneberry v.
McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005)
(describing as "uncluttered logic" its holding that "an employer
who interferes with an employee's FMLA rights will not be liable
if the employer can prove it would have made the same decision had
the employee not exercised the employee's FMLA rights")(cited with
approval in Grubb v. Southwest Airlines, 296 Fed. Appx. 383, 391,
2008 WL 4538313, 7 (5th Cir. 2008)).  The court need not and does
not further consider this argument.